**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Lifeway Foods, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Edward Smolyansky and Ludmila Smolyansky, d/b/a Pure Culture Organics, Inc.,<br><br>Defendants. | Case No. 1:24-cv-02601<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Lifeway Foods, Inc. hereby files its complaint for injunctive relief and damages against Defendants Edward Smolyansky and Ludmila Smolyansky, d/b/a Defendant Pure Culture Organics, Inc. and alleges as follows:

## INTRODUCTION

1. This case involves Defendants' theft of Lifeway's most-valuable trade secrets and its use of those trade secrets to manufacture a directly competing product. Defendants had access to those trade secrets because one of their founders was an executive officer of Lifeway. Indeed, Defendants admitted in a press release that they derived their "new" product from Lifeway's secret formula. But Defendants' brazen misconduct did not stop there—they falsely claimed at the preeminent national trade show where they launched their competing product (based on Lifeway's stolen formula) that Defendants were affiliated with Lifeway when nothing could be further from the truth.

2. Lifeway is the market leader in a dairy product called kefir—a tart, cultured dairy beverage that is similar to a drinkable form of yogurt. Although Lifeway did not invent kefir, it single-handedly created the market for it in the United States. Founded in the 1980's by an

immigrant from the former Soviet Union, Lifeway flourished over the past four decades from a small company that catered to ethnic consumers in the Chicago metropolitan area to the largest producer and marketer of kefir in the United States—and a key player in the broader market spaces of probiotic-based products and natural, "better for you" foods.

3. Lifeway's founder, Michael Smolyansky, served as its CEO until he passed away in 2002. Michael and his wife Ludmila Smolyansky had two children: Julie Smolyansky and Edward Smolyansky. Julie became the CEO in 2002 and remains the CEO today. Edward also worked at Lifeway for about two decades, serving as CFO and, later, as COO. Julie, Edward, and Ludmila each held board seats until recently.

4. To say that familial relations have become strained over the years is an understatement. Lifeway terminated Edward in 2022 and removed him from the board at that time. Ludmila was removed from the board in 2023.

5. Apparently to spite Lifeway (and Julie), Defendants Edward and Ludmila cofounded a competing kefir company called Pure Culture Organics, Inc. But instead of competing fairly against their former colleagues and family member, Defendants decided to cheat by stealing the formula from Lifeway and trading on its long established and credible good name.

6. Defendants debuted to the public in March 2024 at a trade show in Anaheim, California called Natural Products Expo West 2024 ("Expo West"). Expo West is one of the most important trade shows in Lifeway's market space, attended by buyers from essentially all of the biggest national retail chains. Companies frequently debut new product lines at Expo West, and retailers use the show to determine what products they will carry throughout the year. So it was the perfect venue for Defendants to unveil their nefarious plan to injure Lifeway.

7. Part of that plan had already been completed by the time Defendants debuted at Expo West—they had already built their entire competing kefir product line using trade secrets they stole from Lifeway. Because Edward was an executive officer of Lifeway for years, he was one of the employees with need-to-know access to Lifeway's proprietary formulations for its kefir products. But his separation agreement from Lifeway contained an iron-clad confidentiality clause that forbade him from using any of Lifeway's confidential information—including its trade secret proprietary formulations. Despite that express prohibition, Edward not only improperly maintained the proprietary formulations from Lifeway after his separation but also admitted to using those stolen trade secrets to develop Defendants' competing kefir product line.

8. The press release Defendants issued on March 20, 2024 following their Expo West debut confirms Defendants' theft. In that press release, Defendants touted Edward as "a steward of the formula for 20 years at the company [Lifeway]," admitted that Defendants improperly used Lifeway's formulas as a starting point for Defendants' products, and claimed that Defendants' competing kefir products are Edward's attempts to improve that formula.

9. But Defendants did not stop with stealing Lifeway's formula to build their competing products. They also sought to trade on Lifeway's good name by falsely claiming at Expo West that they were affiliated with and, in fact, "under the same umbrella" as Lifeway. Defendants' trade show agent, with full knowledge that he was being videotaped, repeated—again and again—Defendants' false claim of affiliation with Lifeway.

10. And, on information and belief, Defendants—through Edward, Ludmila and Defendants' agents—made those same false misrepresentations about their affiliation with Lifeway to hundreds or even thousands of Expo West attendees, which included many of the most important buyers in the industry. In other words, Defendants launched their brand by stealing

Lifeway's formula and then falsely trading on Lifeway's reputation as the kefir market leader—portraying themselves as a new line of Lifeway kefir products to garner instant and unearned credibility with key industry players.

11. Defendants leave Lifeway with no choice other than filing this complaint to stop Defendants' shameless attempt to steal Lifeway's secret recipe and trade on its good name. Lifeway thus brings this complaint to put an end to, and to recover damages for, Defendants' theft and misappropriation of Lifeway's valuable trade secrets and for Defendants' false claims of affiliation with Lifeway.

**THE PARTIES**

12. Plaintiff Lifeway Foods, Inc. is an Illinois corporation publicly traded on the NASDAQ with its principal place of business at 6431 West Oakton Street, Morton Grove, Illinois.

13. Defendants Edward Smolyansky is an Illinois citizen who resides in Cook County, Illinois.

14. Defendants Ludmila Smolyansky is an Illinois citizen who resides in Cook County, Illinois.

15. Defendants Edward Smolyansky and Ludmila Smolyansky are doing business as Pure Culture Organics, Inc. Counsel searched for the corporate registration of Pure Culture Organics, Inc. but found no entity registered by that name in multiple databases (including but not limited to the databases managed by the secretaries of state of Illinois, California, and Delaware). No entity is registered to do business in Illinois under the name Pure Culture Organics, Inc. as of April 1, 2024. This is why Plaintiff has brought suit against Defendants in their individual capacities.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because they arise under the Defend Trade Secret Act and Lanham Act.

17. This Court has personal jurisdiction over Defendants because they reside and do business in this district.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because Defendants' business operates in this district, Lifeway suffers harm in this district as a result of Defendants' actions, and because the Defendants are transacting business in Illinois.

## FACTUAL BACKGROUND

### A. Lifeway Creates the U.S. Kefir Market and Its Status as Market Leader

19. The genesis of Lifeway begins in 1986 when Michael and Ludmila Smolyansky immigrated to America from the former Soviet Union, and Michael began making Kefir in the basement of their Skokie, Illinois home. Kefir is a live and active cultured dairy beverage with a tart and tangy taste and creamy consistency. Within two years of moving to the United States, Michael founded Lifeway Foods, Inc. and took the company public. Michael served as CEO of the company until he unexpectedly passed away in 2002, with his daughter, Julie, then taking over as CEO. She remains CEO today.

20. There was essentially no market in the United States for kefir at the time of Lifeway's founding. Lifeway changed that, creating and growing the kefir market over the last four decades. Today, it is the clear leader of the kefir market, posting approximately $160 million in net sales of kefir products in 2023.

21. Approximately 80% of Lifeway's net sales are from its drinkable kefir products. It has several lines of such products, including low fat kefir, organic whole milk kefir, organic low fat kefir, nonfat kefir, functional shots, low fat seasonal kefir, traditional kefir, and oat milk kefir.

Each line of drinkable kefir products is offered in a variety of flavors. For example, here are only some of the flavors offered by Lifeway in its low fat kefir line:




**B. Lifeway's Intellectual Property**

22. Lifeway owns many domestic and international trademarks and service marks. Lifeway's trademarks and service marks are important to its marketing efforts to develop brand recognition and differentiate its brand from its competitors. In addition, it owns numerous registered and unregistered copyrights, registered domain names, proprietary trade secrets, trade dress, technology, know-how, processes, and other proprietary rights that are not registered.

23. Lifeway has developed, promoted, advertised, marketed, and distributed its goods in the kefir industry for nearly forty years. During this time, Lifeway has advertised extensively and has a worldwide following. Lifeway also maintains a website at www.lifewaykefir.com to promote its goods.

24. As a result of this marketing, advertising, promoting, and longevity of use, Lifeway has acquired exceedingly valuable goodwill.

25. Lifeway's kefir formulas are some of its most valuable trade secrets, and they are protected accordingly. Access to the formulas are on a need-to-know basis, with only select employees having access to them.

26. Lifeway's kefir products use proprietary blends of live and active kefir cultures. Lifeway has used the same culture formulator for more than 30 years.

27. Lifeway purchases several different kinds of pre-mixed batches of kefir cultures from its formulator. Its kefir product formulations use specific and long-tested proprietary ratios resulting in pre-mixed batches that are optimized for the particular product and flavor. Lifeway's ratios of these kefir cultures in each product, and their proportions to other ingredients, are among the most valuable trade secrets Lifeway maintains—secrets that have contributed significantly to its growth and financial success.

**C. Lifeway's Former COO and CFO Steals Lifeway's Formulas to Start a Competing Company, Pure Culture Organics**

28. Founder Michael Smolyansky's son Edward worked at Lifeway for about two decades, serving as Lifeway's CFO and, later, its COO.

29. While at Lifeway, Edward had access to the formulations for Lifeway's kefir products, including the specific types and ratios of pre-mixed kefir cultures and other ingredients used in each of its various kefir products.

30. Edward was terminated from Lifeway in September 2022. A settlement agreement related to his termination contained, among other things, a restriction on his ability to use confidential information he obtained while he worked at Lifeway. The confidential information

covered by the settlement agreement includes Lifeway's product formulations and other trade secrets.

31. But Lifeway has become aware that Edward has retained at least one copy of Lifeway's product formulations.

32. Indeed, Edward admitted that he misappropriated Lifeway's secret formula in a June 16, 2023 text message sent to a senior officer of Lifeway. Edward stated that he had been working on a "[t]op secret project" and taunted the officer that he possessed "the secret formula."

33. Then, in March 2024, Edward unveiled what Lifeway understands was that top-secret project when he launched a competing kefir company called Pure Culture Organics.

34. In a March 20, 2024 press release announcing the launch of Defendants' Pure Culture Organics company and their line of competing kefir products, Defendants touted Edward's affiliation with Lifeway and his knowledge of its proprietary formula:

> Edward Smolyansky, co-founder of Pure Culture Organics, said: "My father developed the world's best kefir formulation in the world. After he passed away, I had the privilege to be a steward of the formula for 20 years at the company he founded. In recent years, I've been obsessed with trying to develop the cleanest, simplest and most sustainable Kefir. Pure Culture Organics is the result of that obsession."

In other words, the press release unabashedly touted claims that Edward took Lifeway's kefir formulation as its starting point and then improved upon it.

35. Defendants have a website [https://purecultureorganics.com/]. The website advertises a line of kefir products with flavors similar to those manufactured and sold by Lifeway. Defendants advertise the products with the tagline "Simply Better," which trades on Edward's claim that he has taken Lifeway's kefir formulation and improved upon it:




**D. Defendants Falsely Market Themselves as Affiliated With Lifeway**

36. Shortly before issuing the March 20, 2024 press release, Defendants made their market debut at Expo West in Anaheim, CA, which took place on March 12-16, 2024. Expo West is a trade show where companies worldwide showcase their organic and conscious products, including consumer packaged goods, natural foods and lifestyle items. This year, over 3,300 companies were in attendance, with over 840 new-to-show brands being launched. Expo West describes its role as "the epicenter of global health and wellness trends," and it is one of the most important marketing events for companies in industries such as Lifeway's.

37. Over 65,000 industry professionals attended Expo West in 2024, and they included buyers from the biggest retailers in the country. According to the convention's operator, among the attendees were "buyers from Kroger, Aldi, 7-Eleven, Sprouts, Whole Foods Market, Albertson's, Walmart, Costco, Target, Thrive Market, Amazon, Mother's Market, California Fresh Market, New Frontiers Market, Busch's Fresh Food Market, Lassen's, Trader Joe's, Bi-Rite Market, Cambridge Naturals, PCC Markets, Earth Fare, Natural Grocers, Jimbo's, Fresh Thyme, MOM's Organic

Market, Healthy Edge, Wedge Community Coop, CVS and many more."[1] The attendees also include national, mainstream, and industry press, as well as institutional investors, bakers, analysts, suppliers, flavor ingredient providers, bottle makers, label producers, and machinery manufacturers.

38. It is no surprise, then, that Defendants opted to launch their line of kefir drinks at Expo West. Unfortunately, Defendants did so using a strategic marketing plan that they intentionally calculated to mislead the thousands of extremely influential buyers in attendance into falsely believing that Defendants' kefir products are affiliated with Lifeway.

39. Lifeway is in possession of a video showing the Defendants' agent marketing its new kefir products to prospective customers. A copy of the video has been filed as **Exhibit A**. The following is a cropped screen capture from that video, showing Defendants' agent at the booth:




[1] Natural Products, "Natural Products Expo West 2024 Hosts Over 65,000 Industry Professionals and 3,300 Plus Exhibiting Companies," (March 21, 2024), available at https://www.accesswire.com/845416/natural-products-expo-west-2024-hosts-over-65000-industry-professionals-and-3300-plus-exhibiting-companies.

40. When asked if Pure Culture Organics was a new company, Defendants' agent responded: "I think we're under … are you familiar with Lifeway over there?" He then pointed in the direction of Lifeway's Expo West booth. After being told that the interlocutor was familiar with Lifeway, the agent responded: "We're under the same umbrella, is what I was told. It's a brand new product, not on the market yet." He then explained his understanding that the new kefir products would become available for purchase in stores later this year.

41. When Defendants' agent was asked for clarification as to whether Pure Culture Organics was the same company as Lifeway, he repeated the same talking point: "It's under the same umbrella as, I believe, Lifeway. That's what I was told." He eventually told the person taking the video that if they had any questions, they could contact the owner of Pure Culture Organics, who he identified as Edward Smolyansky, about those questions. He then handed out a flyer with contact information for the company.

42. The video evidences Defendants' scheme to trade on Lifeway's good name—by instructing their agents to tell prospective customers that Defendants were "under the same umbrella as Lifeway," automatically associating their product with Lifeway in consumer's minds. On information and belief, Defendants provided a script to their agents working its tradeshow booth to make this representation to hundreds, if not thousands, of potential customers over the course of the weekend. In the alternative, on information and belief, Defendants orally informed their agents working their tradeshow booth to make this representation to hundreds, if not thousands, of potential customers over the course of the weekend. As alleged above, those potential customers included buyers from many of the biggest retailers in the country.

43. The potential customers at Expo West who heard the agent's representations that Defendants were "under the same umbrella as Lifeway"—*i.e.*, the focal point of Defendants'

marketing campaign at Expo West—would reasonably believe that Lifeway and Defendants are affiliated or associated when, in fact, there is no affiliation or association.

44. Further contributing to the likelihood that customers would falsely conclude that Pure Culture Organics is a new brand associated with Lifeway was Defendants' tradeshow booth location. Booth allocations at Expo West are based on "priority points," which are in part comprised of points based on the number of years a company has exhibited at Expo West or certain other Natural Products Expos.

45. Defendants' tradeshow booth, from which it was proselytizing its connection to Lifeway, was in a prime location. Experienced visitors of Expo West would understand that such a prime spot could be obtained only by an established company that had participated in the event for numerous  years. A start-up, such as Defendant, was unlikely to have the booth Defendants had—irrespective of who its founder was unless there was an express, false affiliation in Defendants' request for a specific booth location in proximity to Lifeway.

46. On information and belief, Defendants obtained their prime booth location in proximity to Lifeway misrepresenting to the operators of Expo West its affiliation with Lifeway—similar to the misrepresentations that it later made to Expo West's attendees.

47. The booth placement of Defendants was thus another part of its larger scheme to falsely affiliate itself with Lifeway to improperly bootstrap and trade on Lifeway's goodwill and reputation in the kefir industry.

48. Defendants' entire business is based on fraud. Its product was purportedly derived from Lifeway's secret formula. And it launched its marketing campaign seeking to falsely affiliate itself with Lifeway with the intention of capitalizing upon the notoriety and goodwill Lifeway has built up over the past four decades.

49. And Defendants' conduct is unfairly and irreparably harming Lifeway's business in general, and its kefir products in particular, and that harm is continuing.

50. Unless enjoined, Defendants will continue to use Lifeway's proprietary formulation trade secrets, as well as the untruthful illusion of an affiliation with Lifeway, to the advantage of Defendants and the competitive disadvantage of Lifeway, which will result in a loss of sales and loss of customers to Lifeway.

51. Lifeway's customer relationships, goodwill, and reputation have been developed and maintained at great expense and effort on the part of Lifeway.

52. If Defendants are not immediately enjoined from using stolen trade secrets and creating a false affiliation with Lifeway, Lifeway will continue to suffer irreparable harm.

**COUNT I - TRADE SECRET MISAPPROPRIATION**
**Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.**

53. Lifeway re-alleges and incorporates the allegations contained in paragraphs 1 through 52 as though fully set forth herein.

54. Lifeway's kefir formulations are trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

55. The trade secrets at issue are related to products used in, or intended for use in, interstate or foreign commerce.

56. The trade secrets at issue derive actual and/or potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from their disclosure or use of the information.

57. Lifeway has at all times taken reasonable measures to maintain the secrecy of its kefir formulations, including advising its employees and agents of the existence of a trade secret, limiting access to the formulations on a "need-to-know" basis, and entering into confidentiality

agreements with those who need to know. Lifeway at all times took reasonable measures to maintain the secrecy of the formulations by providing them only to employees and agents on a need-to-know basis and adopting customary security measures.

58. Defendants have used Lifeway's trade secrets without Lifeway's express or implied consent. Such use includes, but is not limited to, developing, offering for sale, and selling products based on Lifeway's formulations.

59. Defendants have used, and continues to use, Lifeway's trade secrets to develop and commercialize its own kefir products and to gain commercial advantages.

60. Defendants have therefore misappropriated Lifeway's trade secrets by—among other acts and omissions—using them without express or implied consent—at a time when they knew or had reason to know that Defendants' knowledge of the trade secrets was acquired under circumstances giving rise to a duty to limit the use of the trade secret.

61. Unless restrained and enjoined from engaging in the foregoing, it is inevitable that Defendants will continue using Lifeway's confidential, proprietary and trade secret information and that Lifeway will suffer the loss of sales, the loss of customers, and other damages.

62. As a direct and proximate result of Defendants' misappropriation, Lifeway has suffered, and will continue to suffer, the loss of sales, the loss of customers, and other damages in an amount to be determined at trial.

**COUNT II – FALSE AFFILIATION**
**Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

63. Lifeway re-alleges and incorporates the allegations contained in paragraphs 1 through 62 though fully set forth herein.

64. Defendants' acts set forth herein constitute false affiliation, connection, or association with Lifeway in violation of 15 U.S.C. 1125(a)(1)(A).

65. Defendant, in connection with promoting and advertising its kefir products, falsely associated itself with Lifeway's without authorization.

66. Defendants' false association caused or is likely to cause confusion, mistake, and deception as to the affiliation, connection, and association of Defendants with Lifeway, as to the origin and sponsorship of Defendants' products and commercial activities, and as to Lifeway's approval of Defendants' goods and commercial activities, and/or vice versa.

67. Defendants' marketing and advertising using of Lifeway's trademarks is material, in that it is likely to, and, upon information and belief, has, influenced customer purchasing decisions, and in particular, is likely to cause and has caused, an appreciable number of businesses and consumers to purchase Defendants' goods rather than Lifeway's.

68. Defendants' false and misleading marketing and advertising is likely to cause, and upon information and belief has caused, irreparable injury to Lifeway's business, and to the goodwill and reputation of Lifeway's goods, and Lifeway has no adequate remedy at law. Upon information and belief, Defendants' actions will continue if not enjoined.

69. As a direct and proximate result of Defendants' false and misleading advertising, Lifeway has incurred damages in an amount to be proven at trial. Such damages include, among other things, lost sales, harm to Lifeway's business reputation and goodwill, and harm to the value and goodwill associated with Lifeway's goods in general, and its kefir products in particular.

70. Upon information and belief, Defendants have obtained significant sales of their kefir products and profits as a result of its false and misleading advertising, and Lifeway is entitled to disgorgement of those profits.

71. This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

72. Lifeway seeks all remedies to which it is entitled, including, without limitation, monetary damages, enhanced damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Lifeway respectfully requests that this Court enter judgment in its favor and against Defendants on each of the foregoing claims and:

(A) Award compensatory damages to Lifeway in an amount to be proven at trial;

(B) Award double, multiple, and/or enhanced damages to Lifeway in an amount to be proven at trial;

(C) Award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

(D) Award Lifeway lost profits and the diminution of value of its intellectual property;

(E) Direct Defendants to account for, and pay over to Lifeway, all gains, profits, and advantages derived from its claims of false affiliation with Lifeway;

(F) Order that Defendant, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them are preliminary and permanently enjoined from:

- Advertising, offering to sell, or selling its current line of kefir products;
- Developing any further products that use Lifeway's trade secrets;
- Claiming an affiliation between Lifeway and Defendant; and
- Referencing, directly or indirectly, Mr. Smolyansky's work for Lifeway or knowledge of Lifeway's formulations and/or about its products generally, in promoting kefir products offered by Defendant.

(G) Directing Defendants to disseminate among consumers and retailers corrective marketing and advertising to dispel the false and deceptive messages they conveyed to potential

customers at Expo West as part of its marketing strategy;

(H) Award Lifeway its reasonable attorneys' fees and costs; and

(I) Grant Lifeway such other and further relief that this Court deems appropriate at law or in equity.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 1, 2024

Respectfully submitted,

By: /s/ Stephen J. Rosenfeld

Richard N. Kessler
Stephen J. Rosenfeld
Micah E. Marcus
Patrick R. O'Meara
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Telephone: (312) 280-0111
E-mail: srosenfeld@mcdonaldhopkins.com
*Counsel for Plaintiff*